**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

BARTECH SYSTEMS INTERNATIONAL, INC., )
                                  Plaintiff(s), )
vs. )
MOBILE SIMPLE SOLUTIONS, INC., et al., )
                             Defendant(s). )
_____ )

Case No. 2:15-cv-02422-MMD-NJK

**ORDER**

(Docket Nos. 442, 446)

       Pending before the Court is the parties' joint statement regarding Plaintiff's motion to compel Defendant GEM SA's ("Defendant") responses to discovery requests. Docket No. 442. For the reasons discussed more fully below, the Court **GRANTS** in part and **DENIES** in part Plaintiff's requests in the joint statement regarding Plaintiff's motion to compel. Docket No. 442.

**I.    PROCEDURAL HISTORY**

       On October 19, 2017, Plaintiff filed a motion to compel Defendant's responses to Plaintiff's requests for production and interrogatories. Docket No. 366. Defendant filed a response in opposition. Docket No. 382. Plaintiff filed a reply. Docket No. 397. On November 27, 2017, the Court denied without prejudice Plaintiff's motion to compel and ordered the parties to meet and confer and file a joint statement in accordance with a specific format. Docket No. 415. On January 12, 2018, the Court granted Defendant's motion to extend time to exchange arguments for the joint statement. Docket No. 438; *see also* Docket No. 437 (motion to extend time). The instant joint statement was filed on January 22, 2018. Docket No. 442.

## II.    STANDARDS

### A.    Discovery

"[B]road discretion is vested in the trial court to permit or deny discovery." *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002); *see also Crawford-El v. Britton*, 523 U.S. 574, 598 (1998).  Parties are entitled to discover non-privileged information that is relevant to any party's claim or defense and is proportional to the needs of the case, including consideration of the importance of the issues at stake in the action, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Fed.R.Civ.P. 26(b)(1).  The most recent amendments to the discovery rules are meant to curb the culture of scorched earth litigation tactics by emphasizing the importance of ensuring that the discovery process "provide[s] parties with efficient access to what is needed to prove a claim or defense, but eliminate unnecessary or wasteful discovery." *Roberts v. Clark Cty. School Dist.*, 312 F.R.D. 594, 603-04 (D. Nev. 2016).

### B.    Motion to Compel

When a party fails to provide requested discovery, the requesting party may move to compel that discovery.  *See* Fed.R.Civ.P. 37(a).  The burden is on "[t]he party resisting discovery" to show "why a discovery request should be denied" by specifying *in detail*, as opposed to general and boilerplate objections, why "*each request* is irrelevant." *FTC v. AMG Servs.*, 291 F.R.D. 544, 553 (D. Nev. 2013) (internal citation omitted) (emphasis added).  This requires the party resisting discovery to show for each request, irregardless of numerosity, how each of its objections is appropriate, by providing the relevant standard for each objection and a meaningfully developed argument as to how the standard has been met.[1] *See Green v. Baca*, 226 F.R.D. 624, 653 (C.D. Cal. 2005) (rejecting blanket claims of privilege as insufficient to address the applicable standard); *see also Kor Media Group, LLC v. Green*, 294 F.R.D. 579,

---

[1] The Court's order at Docket No. 415 reiterated these requirements and articulated that Defendant must address each of its objections, provide arguments supporting each objection, and that Plaintiff must provide arguments opposing each of Defendant's objections.  Docket No. 415 at 2.  The Court further articulated that the parties must meaningfully address each objection with citation to legal authority.  *Id.* at n.1.

582 n.3 (D. Nev. 2013) (courts only address arguments that are meaningfully developed).

## III.  ANALYSIS

### A.  Requests for Production of Documents

#### i.  *Request for Production 7*

All documents concerning or relevant to your counterclaim for damages and the methods used to calculate such alleged damages.

Text of Initial Response:

Defendant objects to Request No. 7 on the grounds that it: (1) is vague with respect to the term "supporting" and "relevant" and the phrase "counterclaim for damages" and "methods used"; (2) is vague and ambiguous requiring Defendant to speculate as to its meaning; (3) calls for information and documents protected by the attorney-client privilege and the attorney work product doctrine; (4) seeks information and/or documents not in possession of Defendant; (5) fails to identify the information sought with reasonable particularity; and (6) calls for a legal conclusion. Subject to and without waiving said objections, Defendant is in the process of identifying whether there are any relevant, non-objectionable documents responsive to this Request. Accordingly, Defendant reserves its right to supplement its response as discovery continues.

Text of Most Recent Response:

Defendant will produce this information when: (1) Defendant establishes that it is the owner of the ABreez Software and that Bartech has no right, title or interest in ABreez; and (2) appropriate safeguards are in place so that Bartech cannot use this sensitive information to further disrupt Defendant's contractual relationship with its clients.

Docket Nos. 442 at 7, 442-10 at 6-7.

In the joint statement, Defendant submits that the case should be bifurcated between issues of ownership of the ABreez software and damages. Docket No. 442 at 10. Defendant submits that, although it did not raise this objection in its initial response to Plaintiff's request, it has not waived the objection because "[s]ince [it] was still determining what Plaintiff's Request No. 7 meant, it could not possibly anticipate all proper objections at that time." *Id.* at 7.

Plaintiff submits that Defendant has waived its objection because Defendant did not raise it in its initial responses. *Id.* at 11. Plaintiff further submits that, although Defendant initially objected to Plaintiff's request as vague and ambiguous, "it could at least comprehend that damages are the focal point" of the request. *Id.* at 12.

. . . .

3

Failure to assert an objection to discovery requests constitutes a waiver of an objection. *See Wilson v. Greater Los Angeles Ass'n of Realtors*, 2016 U.S. Dist. LEXIS 58595, at *8 (D. Nev. May 2, 2016) (citing *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) (internal citation omitted)). Defendant had the opportunity to obtain clarification from Plaintiff regarding any terms it found vague or ambiguous. The meet and confer ordered by the Court at Docket No. 415 should not have served as Defendant's first attempt to obtain such clarification. Moreover, Defendant's confusion as to certain terms could not have reasonably clouded its understanding that Plaintiff was requesting discovery regarding damages, even generally, to the degree it could not anticipate its current objection.

Accordingly, the Court GRANTS Plaintiff's motion regarding Request for Production Number 7 as unopposed.[2]

     *ii.*    *Request for Production 15*

For the period of January 1, 2014 to the present, copies of GEM's:

> (a) Financial statements and filed tax returns (including parent and subsidiary companies);
>
> (b) Business plan(s); and
>
> (c) Operating budget(s).

<u>Text of Initial Response:</u>

Defendant objects to Request No. 15 on the grounds that it: (1) is vague with respect to the phrases "Financial statements", "including parent and subsidiary companies", "Business plan" and "Operating budget"; (2) is vague and ambiguous requiring Defendant to speculate as to its meaning; (3) is overly broad in that it is not limited to the time period and subject matter relevant to this litigation; (4) is overly broad and unduly burdensome; (5) calls for privileged information; (6) asks for information not reasonably calculated to lead to the discovery of admissible evidence; and (7) fails to identify the information sought with reasonable particularity.

---

[2]To the extent Defendant has concerns about confidentiality and/or the exchange of confidential information, those concerns are best addressed by a protective order between the parties rather than withholding relevant discovery. A stipulated protective order is already in place in the instant case. Docket No. 348. *See Paws Up Ranch, LLC v. Green*, 2013 WL 6184940, at *4 (D. Nev. Nov. 22, 2013) (citing *in re Heritage Bond Litig.*, 2004 WL 1970058, at *5 n.12 (C.D. Cal. July 23, 2004)); *see also AFMS LLC v. United Parcel Serv. Co.*, 2012 WL 3112000, at *7 (S.D. Cal. July 30, 2012) (Protective order allowing confidential or highly confidential designations is sufficient to protect trade secrets (citing *in re McKesson Governmental Entities Average Wholesale Price Litig.*, 264 F.R.D. 595, 603 (N.D. Cal. 2009)).

4

<u>Text of Most Recent Response:</u>

Defendant objects to Request No. 15 on the grounds that it: (1) is overly broad in that it is not limited to the time period; and (2) asks for information not reasonably calculated to lead to the discovery of admissible evidence.

Docket Nos. 442 at 15, 442-10 at 10.

Defendant submits that this request is overly broad because the time period within which Plaintiff requests the information dates almost three years prior to Defendant becoming a party to the instant case. Docket No. 442 at 15. Defendant further submits that this request is not reasonably calculated to lead to the discovery of admissible evidence because disclosure of a party's tax returns and other financial information is "disfavored" and should not be "routinely required." *Id.* at 15-16 (internal citation omitted).

Plaintiff submits that its request is not overly broad "given GEM's lengthy and surreptitious involvement in this litigation" and because Defendants Vincent Tessier and Christelle Pigeat "began conspiring to develop the ABreez software using Bartech's misappropriated trade secrets by at least 2012." *Id.* at 17-18. Plaintiff further submits that its request is reasonably calculated to lead to admissible evidence because "GEM's finances will likely uncover the details and circumstances concerning GEM's purchase of Mobile Simple and the ABreez Software" and because such information is relevant to Plaintiff's request for punitive damages.[3] *Id.* at 18.

Defendant's argument in support of its objections does not cite to any binding case law. *Id.* at 15-16. Although the Court finds that tax returns and other financial information are relevant to Plaintiff's request for punitive damages,[4] it finds that the time period within which Plaintiff makes its request is overbroad. *See Trejo v. Macy's, Inc.*, 2014 U.S. Dist. LEXIS 35464, at *6-7 (D. Nev. Mar. 18, 2014)

---

[3] Plaintiff submits an email chain between Defendant Pigeat, Jacques Manardo (Defendant's managing director), "and a separate GEM representative," that discusses Mobile Simple's financial forecast. Docket Nos. 442 at 18, 442-35, 442-36. The email chain, however, appears to be between Defendant Pigeat, Mr. Manardo, and a third party assistant ("assistantdg@todotoday.com"), not "a separate GEM representative." Docket Nos. 442-35, 442-36. (The third party assistant is employed by a concierge service company called 'To Do Today,' of which Mr. Manardo is a director, Docket No. 442-38 at 2). Moreover, the email chain is dated July 18-20, 2017. *Id.* Therefore, the email chain does not support Plaintiff's argument that the time period within which it requests Defendant's financial information is not overly broad.

[4] As noted above, any concerns about sensitivity of information are best addressed with a protective order.

(finding that information about a defendant's financial status is relevant to a plaintiff's request for punitive damages); *see also Phillips v. Clark Cty. Sch. Dist.*, 2012 U.S. Dist. LEXIS 5309, at *37-38 (D. Nev. Jan. 18 2012) (finding that a "defendant's financial condition is relevant to the pursuit of punitive damages," and that a plaintiff does not have to "make a prima facie showing of merit on its punitive damage claim" before the court can permit discovery of a defendant's net worth, noting that such information generally is not secret from the public); *see also Acton v. Target Corp.*, 2010 U.S. Dist. LEXIS 150874 , at *6 (W.D. Wash. May 11, 2010) (permitting Plaintiff to "make brief inquiries as to [the defendant's] financial resources, as those resources are relevant to Plaintiff's claim for punitive damages).

Plaintiff requests financial information from Defendant dating from January 1, 2014, based only on Plaintiff's bald assertion regarding Defendant's "lengthy and surreptitious involvement" in the litigation and the fact that Defendants Tessier and Pigeat allegedly began conspiring to misappropriate Plaintiff's trade secrets in 2012. Docket No. 442 at 17-18. Defendant was joined as a party on May 9, 2017. Docket No. 306. Further, the alleged fraudulent sale and transfer of Defendant Mobile Simple Solutions (IAS), Inc.'s ("Mobile Canada") assets and the ABreez software to Defendant occurred on September 28, 2016. Docket Nos. 406-3, 406-4 (asset and purchase sale agreement). Moreover, it is irrelevant that Defendants Tessier and Pigeat allegedly began to conspire against Plaintiff in 2012 because Plaintiff does not allege Defendant was involved in their alleged conspiracy at that time. The Court therefore finds that the time period within which Plaintiff makes its request is overbroad.

Accordingly, the Court GRANTS in part and DENIES in part Plaintiff's Request for Production Number 15, as amended to the time period of September 1, 2016.

    *iii.*    *Request for Production 16*

All documents concerning sales (actual and projected), advertising, marketing, or licensing of Mobile Simple Software, including but not limited to:

(a) Statements of work;

(b) Invoices;

(c) Accounts receivables; and

(d) Correspondence, including e-mai communications and subscription offers.

. . . .

Text of Initial Response:

Defendant objects to Request No. 16 on the grounds that it: (1) is vague with respect to the terms "discuss, reference, constitute" and "sales" and the phrases "Mobile Simple Software", "Statements of work", and "subscription offers"; (2) is vague and ambiguous requiring Defendant to speculate as to its meaning; (3) calls for information and documents protected by the attorney client privilege and the attorney work-product doctrine; (4) seeks information and/or documents not in possession of Defendant; (5) is overly broad and unduly burdensome; and (6) fails to identify the information sought with reasonable particularity. Subject to and without waiving said objections, see all documents produced by Defendant, including but not limited to, documents identified as bates numbers GEM000113 – GEM000146, GEM000317, GEM000540 –GEM000542, and GEM000643 – GEM000641.

Text of Most Recent Response:

Defendant objects to Request No. 16 to the extent it seeks information and documents protected by the attorney-client privilege and the attorney work-product doctrine, as detailed in Defendant's privilege log, Bates numbers GEM000900-GEM000966. Subject to and without waiving said objection, see all documents produced by Defendant, including but not limited to, documents identified as bates numbers GEM000113-GEM000146, GEM000317, GEM000540-GEM000542, GEM000643-GEM000651, and GEM000778-GEM000884.

Docket Nos. 442 at 19, 442-10 at 10-11.

Defendant objects to this request on grounds of the attorney-client privilege and the attorney work-product doctrine. Docket No. 442 at 19. Defendant submits that it has standing to assert these privileges as to certain communications involving "non-GEM defendants" and third party Snell & Wilmer, LLP ("Snell"), based on "Mr. Manardo's privileged relationship with Christelle Pigeat, who herself maintained a privileged attorney-client relationship with Snell & Wilmer, as [a] financial consultant at the time of the subject communication with Snell & Wilmer."[5] Id. at 20. Defendant further submits that the accountant-client privilege protects communications involving any "individuals or entities," including Mr. Manardo, who acted "in an accounting, CPA, and/or financial advisement capacity." Id. at 21-23. Defendant also submits that the attorney-client privilege, as applied by the Superior Court of Canada, Province of Québec, District of Montreal ("the Canadian court"), protects any communications between it and its former counsel Gravel, Bernier, Vaillancourt Avocats ("GBV"). Id. at 23-24. Lastly, Defendant submits that it does not possess certain communications relevant to this request that were identified in a privilege log from

---

[5] The Court construes "non-GEM Defendants" to indicate Defendants Tessier, Pigeat, Mobile Simple Solutions, Inc. ("Mobile USA"), and Mobile Canada.

Defendant Mobile Canada's Canadian bankruptcy proceeding "by virtue of Mr. Manardo's process for viewing and archiving communications," where he frequently deletes communications he deems "innocuous, as a means of saving memory space on his phone." *Id.* at 24.

Plaintiff submits Defendant does not have standing to assert the attorney-client privilege because it fails to provide factual support of any agency relationship between itself and Mr. Manardo on behalf of the non-GEM defendants. *Id.* at 26. Without such support, Plaintiff submits, Mr. Manardo is merely a third party and, therefore, his inclusion on any communications waives the attorney-client privilege. *Id.* at 30. Additionally, Plaintiff submits Defendant does not have standing to assert the accountant-client privilege because, not only does it fail to provide factual support that Mr. Manardo acted in his capacity as a CPA, but the privilege can only be asserted by Defendant Pigeat if she was a client of Mr. Manardo's. *Id.* at 27-28. Plaintiff further submits that American law should govern any privilege between Defendant and GBV as it pertains to GBV's representation of Defendant in the alleged fraudulent sale and transfer of Defendant Mobile Canada's assets and the ABreez code to Defendant. *Id.* at 30-31. Lastly, Plaintiff submits that Defendant's claim that Mr. Manardo "likely did not retain" certain communications is evasive and fails to detail any attempts to search for responsive documents. *Id.* at 39.

      *i.*     Attorney-Client Privilege as to Snell

Defendant asserts the protection of the attorney work-product doctrine and submits that it has an "extended" attorney-client relationship with Snell. *Id.* at 20. However, Defendant fails to provide any meaningfully-developed arguments regarding the attorney work-product doctrine. As such, the Court does not address the merits of this objection. *Cf. Kor Media Group, LLC v. Green*, 294 F.R.D. 579, 582 n.3 (D. Nev. 2013) (courts only address arguments that are meaningfully developed).

Further, Defendant submits that its privilege log is sufficiently detailed "to enable Plaintiff and this Court to determine whether any communication is privileged." Docket No. 442 at 25. A party asserting a privilege has the inevitable burden to demonstrate the applicability of that privilege. *See e.g.*, *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 634 (D. Nev. 2013). One way to satisfy this burden is by submitting a privilege log. *See e.g.*, *United States Inspection Servs. v. NL Engineered Solutions, LLC*, 268 F.R.D 614, 625-626 (N.D. Cal. 2010). A "privilege log must give enough information for the court to determine whether a protection or privilege exists... ." *Carolina Cas. Ins. Co. v. Oahu Air Conditioning Serv.*, 2015

U.S. Dist. LEXIS 40786, at *25 (D. Nev. March 30, 2015). Fed.R.Civ.P. 26(b)(5)(A) provides the standards a party must satisfy when invoking a privilege against discovery production:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed — and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

These standards are more fully detailed in *Nevada Power Co. v. Monsanto Co.*, which states that a privilege log must provide for each document: "(1) its type (i.e. letter, memo, notes, etc.), (2) its author, (3) its intended recipients, (4) the names of any other individuals with access to the document, (5) the date of the document, (6) the nature of the claimed privilege (i.e. attorney-client, work-product, etc.), and (7) a brief summary of the subject matter of the document." 151 F.R.D. 118, 121 (D. Nev. 1993).

The Court finds Defendant's privilege log inadequate. Docket No. 442-37. First, the Court's order at Docket No. 415 explicitly required that the joint statement be complete in itself. As one example of a failure to comply with the Court's order, Defendant claims the privilege as to communications with counsel from Snell but fails to identify which names on the privilege log are even associated with Snell. Without a sufficient privilege log, the Court cannot decide whether or not the attorney-client privilege exists as to communications with Snell. Second, although Defendant cites case law that extends the attorney-client privilege to a third party agent or consultant, it does not provide any factual support that such an agency relationship existed between itself, Mr. Manardo, and any of the non-GEM defendants. The Court therefore finds that Defendant fails to provide any meaningfully-developed argument to prove it has standing to assert the attorney-client privilege as to any communications with Snell. *See Green v. Baca*, 226 F.R.D. at 653; *see also Kor Media Group, LLC v. Green*, 294 F.R.D. at 582 n.3.

Accordingly, the Court does not reach the merits of Defendant's objection on grounds of the attorney-client privilege as to any communications that involve Snell, and Plaintiff's request is GRANTED as to these communications.

. . . .

. . . .

. . . .

*ii.*     Accountant-Client Privilege

Nevada Revised Statute ("NRS") 49.195 provides that the accountant-client privilege "may be claimed by the client, the client's guardian or conservator, the personal representative of a deceased client, or the successor, trustee or similar representative of a corporation, association or other organization, whether or not in existence." Defendant asserts that Mr. Manardo's certification as a public accountant is a blanket protection over all communications made between him and Defendant Pigeat, yet fails to provide any facts that establish that the communications were "made for the purpose of facilitating the rendition of professional accounting services," nor that it has standing to assert this privilege. NRS 49.185; *see also* Docket No. 442 at 23. Defendant, therefore, fails to provide any meaningfully-developed argument to demonstrate it has standing to assert the accountant-client privilege as to any communications that involve Mr. Manardo. *See Green v. Baca*, 226 F.R.D. at 653; *see also Kor Media Group, LLC*, 294 F.R.D. at 582 n.3.

Accordingly, the Court does not reach the merits of Defendant's objection on grounds of the accountant-client privilege, and Plaintiff's request is GRANTED as to these communications.

*iii.*     Attorney-Client Privilege as to GBV

Defendant submits that any communications between it, Defendants Mobile Canada and Pigeat, and GBV related to the alleged fraudulent transfer are privileged based on the Canadian court's finding in a proceeding related to Defendant Mobile Canada's bankruptcy. Docket No. 442 at 23-24; *see also* Docket No. 442-39 at 4-6.

Plaintiff submits that American privilege law should govern these communications pursuant to the "touch base" analysis from *Cadence Pharm., Inc. v. Fresenius Kabi USA, LLC*. Docket No. 442 at 30-31; *see also* 996 F. Supp. 2d 1015, 1019 (S.D. Cal. 2014). To determine whether American or a foreign country's privilege law applies, the "touch base" analysis requires the court to look at (1) where the legal advice protected by the privilege was rendered; (2) what the legal advice relates to; and (3) whether foreign counsel was involved in rendering the advice. *Cadence Pharm., Inc.*, 996 F. Supp. 2d at 1019 (citing *Gucci America, Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 64-65 (S.D.N.Y. 2010)). Courts will "defer to the law of the country that has the 'predominant' or 'the most direct and compelling interest' in whether the challenged communications should remain confidential, unless that foreign law is contrary to the public policy of the

10

forum." *Id.* To determine which country has the "predominant interest," the court looks to where the privileged relationship was entered into or where the privileged relationship was "centered" at the time of the communication. *Id.* As a general matter, American law will apply when the communication concerns a legal proceeding in the United States or when the advice was regarding American law; a foreign country's law will apply when the communication relates to a foreign proceeding. *Id.*

In the instant case, the communications at issue pertain to the asset sale between Defendant and Defendant Mobile Canada. Docket No. 442-39 at 5. Plaintiff filed a "proof of claim" in the Canadian court regarding Defendant Mobile Canada's bankruptcy. *Id.* at 2. As part of that proceeding, Plaintiff deposed Defendant Pigeat as Defendant Mobile Canada's former CEO. *Id.* at 3. During the deposition, Plaintiff requested "copies of Mobile Canada's and Pigeat's written communications to [GEM], and to its representative, Jacques Manardo." *Id.* Defendant Pigeat's counsel objected on the grounds that the communications were protected by the attorney-client privilege. *Id.* The Canadian court found that the communications were privileged because "Mobile Canada, Pigeat, and GEM were jointly seeking and obtaining legal advice from GBV" regarding the sale, despite the fact that non-parties were included on those communications. *Id.* at 5.

This Court applies the "touch base" analysis. The Court assumes that the deposition took place in Canada, given that the deposition was taken pursuant to a legal proceeding initiated in Canada. *See generally id.* Therefore, as to the first factor, the legal advice was rendered in Canada. As to the second factor, the advice relates to communications made between a Canadian company (Defendant Mobile Canada) and a Belgian company (Defendant), regarding a business transaction between the two companies. *Id.* at 3. Therefore, as to the second factor, the legal advice relates to foreign countries and companies. As to the third factor, GBV is a Canadian law firm.

The Court further finds that Canada has the predominant interest in keeping the communications at issue confidential. The privileged relationship was centered in Canada at the time of the communication, the Canadian court conducted a hearing solely on the issue of whether the attorney-client privileged applied to the communications, and found that the communications are privileged. *Id.* Canada, therefore, has the predominant interest in maintaining the privileged relationship determined by its court. Lastly, the Court finds that the attorney-client privilege, as applied in the Canadian proceeding, is not contrary to American

public policy. The Canadian court found that "for the privilege to exist there must be: i) a communication between solicitor and client; ii) which entails the seeking or giving of legal advice; and iii) which is intended to be confidential by the parties." Docket No. 442-39 at 4.

NRS 49.095, which governs the attorney-client privilege, provides as follows:

"A client has a privilege to refuse to disclose, and to prevent any other person from disclosing, confidential communications:

1) Between the client or the client's representative and the client's lawyer or the representative of the client's lawyer.

2) Between the client's lawyer and the lawyer's representative.

3) Made for the purpose of facilitating the rendition of professional legal services to the client, by the client or the client's lawyer to a lawyer representing another in a matter of common interest.

The Court finds that the attorney-client privilege as applied by the Canadian court and the attorney-client privilege as defined by NRS 49.095 are compatible and, therefore, Canadian law is not contrary to American public policy.

For the aforementioned reasons, and as a matter of comity, the Court finds that the communications at issue do not touch base with the United States. Accordingly, the Court applies Canadian privilege law, as applied by the Canadian court, to communications between Defendant, Defendants Mobile Canada and Pigeat, and GBV. Therefore, Plaintiff's request regarding these communications is DENIED.

*iv.* Mr. Manardo's Email Communications

Defendant submits that it does not possess many of the emails involving Mr. Manardo that are included in Defendant Mobile Canada's privilege logs from its bankruptcy proceeding "by virtue of Mr. Manardo's process for viewing and archiving communications." Docket No. 442 at 24; *see also* Docket Nos. 442-42, 442-43. Defendant submits that Mr. Manardo forwards and archives emails and "deletes those email communications that he consider innocuous, as a means of saving memory space on his phone" and, therefore, "any email communications not provided by GEM that may have been provided in the bankruptcy have most likely been deleted by Mr. Manardo." Docket No. 442 at 24.

Defendant is obligated to seek information responsive to a discovery request "reasonable available to it from its employees, agents, or others subject to its control." Fed.R.Civ.P. 34; *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 189 (C.D. Cal. 2006) (internal quotations and citations omitted). When

12

a party asserts that it does not have responsive documents, it must come forward with an explanation of the search conducted "with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence." *Rogers v. Giurbino*, 288 F.R.D. 469, 485 (S.D. Cal. 2012). Defendant's submission that responsive communications "have most likely been deleted by Mr. Manardo" is plainly insufficient to satisfy its obligation under Fed.R.Civ.P. 34. Therefore, Plaintiff's request regarding these communications is GRANTED.

    *iv. Request for Production 17*

    Documents concerning compensation of any present or former employee, officer, director and/or agent who is involved in any respect with Mobile Simple Software.

    Text of Initial Response:

Defendant objects to Request No. 17 on the grounds that it: (1) is vague with respect to the terms "discuss, reference, constitute" and "compensation" the phrases "any present or former employee, officer, director and/or agent", "involved in any respect", and "Mobile Simple Software"; (2) is vague and ambiguous requiring Defendant to speculate as to its meaning; (3) seeks information and/or documents not in possession of Defendant; (4) is overly broad in that it is not limited to the time period and subject matter relevant to this litigation; (5) asks for information not reasonably calculated to lead to the discovery of admissible evidence; and (6) fails to identify the information sought with reasonable particularity.

    Text of Most Recent Response:

Defendant objects to Request No. 17 on the grounds that it: (1) seeks information not reasonably calculated to lead to the discovery of admissible evidence; and (2) is overly broad. Defendant also objects to this Request to the extent it seeks information and documents protected by the attorney-client privilege and the attorney work-product doctrine.

Docket Nos. 442 at 41, 442-10 at 11.

    Defendant objects to this request on grounds of the attorney-client privilege and the attorney work-product doctrine. Docket No. 442 at 42. Defendant further objects to this request as overly broad, and not reasonably calculated to lead to the discovery of admissible evidence. *Id.*

    Plaintiff submits that its request is reasonably calculated to lead to the discovery of whether or not any agents, "including but not limited to Defendants Tessier and Pigeat," were retained around the time of the alleged fraudulent sale. *Id.* at 43.

    Defendant did not raise the attorney-client privilege or the attorney work-product doctrine in its initial response and, therefore, has waived these objections. *See Wilson v. Greater Los Angeles Ass'n of Realtors*, 2016 U.S. Dist. LEXIS 58595, at *8; *see also supra* Section III(A)(i). Without citing to any

binding case law, Defendant submits that discovery of employee compensation information, like tax returns and financial status information, should be limited and is not relevant to punitive damages. Docket No. 442 at 42; *see also supra* Section III(A)(ii). As the Court previously discussed, such financial information is relevant to Plaintiff's request for punitive damages. *See supra* Section III(A)(ii). The Court, however, finds that Plaintiff's request is overbroad. Plaintiff submits that "the bulk of [the] information will pertain to agents retained around the time of the sham transaction, including but not limited to Defendants Tessier and Pigeat." Docket No. 442 at 43. The request, however, is not limited to this, or any, time period. The Court therefore limits the time period in this request to August 2016 through November 2016.

Accordingly, the Court GRANTS in part and DENIES in part Plaintiff's motion regarding Request for Production 17.

B. Interrogatories

i. *Interrogatory 15*

Identify all computers and servers, including portable or laptop computers, network file server computers, and Cloud based servers, on which any of the Defendants installed the Computer Code for the Mobile Simple Software, including identification of the:

(1) Location of the computer or server;

(2) Number for the computer or server;

(3) Name of the primary user of the computer or server;

(4) Kind of network software used to run the network file server computer; and

(5) Number and location of workstations any network file server serves.

Text of Initial Response to Interrogatory 15:

Defendant objects to Interrogatory No. 15 on the grounds that it: (1) is vague with respect to the terms "computers", "kind", and "installed", and the phrase "any of the Defendants", "Computer Code", "Mobile Simple Software", "Number for", "primary user", "network file server computer", and "any network file server"; (2) is vague and ambiguous requiring Defendant to speculate as to its meaning; (3) is overly broad in that it is not limited to the time period and subject matter relevant to this litigation; (4) seeks information and/or documents not in possession of Defendant; (5) is overly broad and unduly burdensome; (6) calls for privileged and/or confidential information; (7) asks for information not reasonably calculated to lead to the discovery of admissible evidence; and (8) fails to identify the information sought with reasonable particularity. Subject to and without waiving said objections, see Defendant's Response to Interrogatory No. 12.

Text of Initial Response to Interrogatory 12:

Defendant objects to Interrogatory No. 12 on the grounds that it: (1) is vague with respect

14

to the terms "copies", "possession", "Source Code", and "Object Code", and the phrase "Mobile Simple Software"; (2) is vague and ambiguous requiring Defendant to speculate as to its meaning; (3) is overly broad and unduly burdensome; (4) calls for privileged information; and (5) fails to identify the information sought with reasonable particularity. Subject to and without waiving said objections, Defendant has two copies of ABreez source code in DVD format, which was sent to Defendant after purchasing ABreez.

Text of Most Recent Response to Interrogatory 15:

Based upon Defendant's understanding that Interrogatory No. 15's reference to "Mobile Simple Software" is a reference to ABreez, see Defendant's Response to Interrogatory No. 12. In addition, ABreez is installed on a laptop computer in Christelle Pigeat's possession, as she is the primary user of the computer.

Text of Most Recent Response to Interrogatory 12:

Defendant submits its response to Interrogatory No. 12 with the understanding that Plaintiff's reference to "Mobile Simple Software" is in relation to the ABreez software, and that the reference to "any Source Code and Object Code" is limited to ABreez Source Code and Object Code. Defendant currently has two DVD copies of ABreez and the ABreez source code. These are the same copies that were provided to GEM from Mobile Simple after purchasing ABreez. GEM's current version and copy of ABreez and its source code are the same version of ABreez and source code that was provided to GEM upon its purchase. See also documents identified as bates number GEM000775 – GEM 000777.

Docket Nos. 442 at 44, 442-9 at 8-10.

Defendant does not object to this interrogatory and submits that the ABreez code is located only on two DVDs, which have been provided to Plaintiff, and on Defendant Pigeat's laptop. Docket No. 442 at 44. Defendant further submits that it is "currently verifying all matters relating to the installation of the ABreez software suite." *Id.* at 45.

Plaintiff submits numerous exhibits that indicate the presence of the ABreez code in more locations than Defendant has identified. *Id.* at 43-44 (internal citations omitted). Plaintiff submits that the ABreez code is located on the Microsoft Azure cloud service ("Azure"), as is indicated by: (1) Defendant Tessier's testimony (Docket No. 442-44 at 3); (2) Defendant's counterclaim, which submits that "the ABreez software is comprised of the 'ABreez cloud computing tool'" (Docket No. 442-45 at 27); (3) the asset purchase agreement between Defendant and Defendant Mobile Canada, which transferred Defendant's subscription to Azure to Defendant Mobile Canada (Docket Nos. 442-46 at 4, 442-47 at 5); (4) Defendant Pigeat's request to a Microsoft representative to transfer Defendant's subscription to Azure from Defendant Pigeat to Mr. Manardo as a result of the asset purchase agreement (Docket No. 442-48); and (5) non-party Morgans Hotel Group Management LLC's response to Plaintiff's subpoena that "it will provide a copy of

15

a 'Windows Service' file that allows the ABreez software to operate on certain of Morgan's systems."

Docket No. 442-49 at 6.

Accordingly, the Court GRANTS Plaintiff's motion regarding Interrogatory 15.

ii.     *Interrogatory 16*

Identify all clients, customers, or prospective clients or customers using Mobile Simple Software, and for each client, customer, or prospective client or customer state:

(a) The date you first contacted the client concerning Mobile Simple Software;

(b) All conversations you had with them concerning any alleged advantages of Mobile Simple Software over Bartech Software;

(c) All representations you made to them concerning Bartech Software; and

(d) All representations you made to them concerning Mobile Simple Software.

Text of Initial Response:

Defendant objects to Interrogatory No. 16 on the grounds that it: (1) is vague with respect to the terms "using", "clients", and "customers", and the phrases "Mobile Simple Software" and "alleged advantages"; (2) is vague and ambiguous requiring Defendant to speculate as to its meaning; (3) is overly broad in that it is not limited to the time period and subject matter relevant to this litigation; (4) is overly broad and unduly burdensome; (5) calls for privileged and/or confidential information; (6) asks for information not reasonably calculated to lead to the discovery of admissible evidence; (7) fails to identify the information sought with reasonable particularity; and (8) calls for a legal conclusion. Subject to and without waiving said objections, the issue of rights to the ABreez software should be adjudicated before the parties should be permitted to conduct discovery on information relating to damages, including but not limited to information pertaining to Defendant's clients, customers, or prospective clients or customers.

Text of Most Recent Response:

Defendant objects to Interrogatory No. 16 on the grounds that it calls for privileged and/or confidential information. Subject to and without waiving said objections, the issue of rights to the ABreez software should be adjudicated before the parties should be permitted to conduct discovery on the information relating to damages, including but not limited to information pertaining to Defendant's clients, customers, or prospective clients or customers.

Docket Nos. 442 at 46, 442-9 at 10 -11.

Defendant objects to this interrogatory on grounds that the case should be bifurcated between issues of ownership of the ABreez software and damages and that the information is privileged and confidential. Docket No. 442 at 46. Defendant submits that communications with its clients and prospective clients are confidential, as they could be used by Plaintiff to undermine Defendant's business. *Id.* at 47.

Plaintiff submits that information in response to the interrogatory would be protected pursuant to

16

the protective order and that Defendant's allegations of Plaintiff's improper motives to undermine Defendant's business are unfounded. *Id.* at 49-50; *see also* Docket No. 442-33 (stipulated protective order as issued by Eighth Judicial District Court, Clark County).

Defendant did not raise the bifurcation objection in its initial response and, therefore, has waived it. *See Wilson v. Greater Los Angeles Ass'n of Realtors*, 2016 U.S. Dist. LEXIS 58595, at *8; *see also supra* Section III(A)(i).

Defendant incorrectly submits that Plaintiff's interrogatory pertains to its conversations with its clients and prospective clients generally. *Id.* at 47. Defendant also incorrectly categorizes Plaintiff's interrogatory with requests for "commercial information, such as...invoices...contracts, exiting sales, [and] contact information." *Id.* Interrogatory 16, on its face, is limited in subject matter to conversations with Defendant's clients and prospective clients that discuss the advantages of the Mobile Simple Software over Plaintiff's software and any representations Defendant made regarding Mobile Simple Software and Plaintiff's software. *Id.* at 46. The parties are obligated to conduct discovery pursuant to a protective order. Docket No. 442-33. Moreover, Defendant fails to provide factual information to support an allegation of improper motive on behalf of Plaintiff to undermine Defendant's business.

Accordingly, the Court GRANTS Plaintiff's request regarding Interrogatory 16.

   *iii.*  *Interrogatory 17*

   Identify and describe all communications between GEM and the following persons concerning Mobile Simple Software and/or Computer Code prior to filing of the Complaint:

     a) Jacques Manardo;

     b) Caroline Dion;

     c) Gino Gillis;

     d) Christelle Pigeat;

     e) Vincent Tessier;

     f) March-Andre Landry;

     g) Emmanuel Phaneuf;

     h) Pat Byrne;

     i) Michael Stein;

j) Sherry Ly;

k) Laurent Cardot;

l) Emmanuel Marcus;

m) Razvan Costin;

n) Ashish Joglekar;

o) Philippine Lescuyer; and

p) Eric Morgenstern.

<u>Text of Initial Response:</u>

Defendant objects to Interrogatory No. 17 on the grounds that it: (1) is vague with respect to the phrases "Mobile Simple Software" and "Computer Code"; (2) is vague and ambiguous requiring Defendant to speculate as to its meaning; (3) calls for information and documents protected by the attorney-client privilege and the attorney work-product doctrine; (4) seeks information and/or documents not in possession of Defendant; (5) is overly broad in that it is not limited to the time period and subject matter relevant to this litigation; (6) is overly broad and unduly burdensome; (7) calls for privileged information; (8) asks for information not reasonably calculated to lead to the discovery of admissible evidence; and (9) fails to identify the information. Subject to and without waiving said objections, see all documents produced by Defendant, including but not limited to, documents identified as bates numbers GEM000291 – GEM000310. Defendant is in the process of identifying whether there is any additional, nonobjectional information responsive to this Interrogatory. Accordingly, Defendant reserves its right to supplement its response as discovery continues.

<u>Text of Most Recent Response:</u>

Defendant objects to Interrogatory No. 17 on the grounds that it: (1) is overly broad and unduly burdensome; (2) is a compound question composed of 16 subparts that causes Plaintiff's Interrogatories to exceed the allowable limit under Fed.R.Civ.P. 33(a)(1); and, (3) seeks information and documents protected by the attorney-client privilege, the attorney work-product doctrine, and/or accountant privilege, as detailed in Defendant's privilege log, Bats [sic] numbers GEM000900-GEM000966. Subject to and without waiving said objections, and based upon Defendant's understanding that Interrogatory No. 17's reference to "Mobile Simple Software" is a reference to ABreez, see all documents produced by Defendant, including but not limited to, documents identified as bates numbers GEM000291 – GEM000310, GEM000652-GEM000774, and GEM000778 – GEM000899.

There are no email communications between Jacques Manardo and GEM as Jacques Manardo is the individual who corresponds on behalf of GEM. Communications between Caroline Dion and GEM regarding ABreez, if any, are protected by the attorney client privilege as Caroline Dion worked for GBV who represented GEM in its purchase of ABreez. Communications between Gino Gillis and GEM regarding ABreez, if any, are protected by the attorney client privilege as Gino Gillis worked for GBV who represented GEM in its purchase of ABreez, as detailed in Defendant's privilege log, Bates numbers GEM000900-GEM000966. For communications between Christelle Pigeat and GEM regarding ABreez, see documents identified as bates numbers GEM000291 – GEM000310, GEM000652-GEM000774, and GEM000778 – GEM000884. To the extent there are further communications between GEM and Christelle Pigeat prior to the filing of the Complaint, such are protected as privileged communications and/or accountant privilege,

as detailed in Defendant's privilege log, Bates numbers GEM000900-GEM000966. There are no direct email communications between GEM and Vincent Tessier regarding ABreez, though there are email communications relating to technical matters that include Vincent Tessier, see documents identified as bates numbers GEM000652-GEM000774. Communications between Marc-Andre Landry and GEM regarding ABreez, if any, are protected by the attorney client privilege as Marc-Andre Landry worked for GBV who represented GEM in its purchase of ABreez, as detailed in Defendant's privilege log, Bates numbers GEM000900-GEM000966. There are no communications between GEM and Emmanuel Phanuef regarding ABreez. Communications between Pat Byrne and GEM regarding ABreez, if any, are privileged communications, as detailed in Defendant's privilege log, Bates numbers GEM000900-GEM000966. Communications between Sherry Ly and GEM regarding ABreez, if any, are privileged communications, as detailed in Defendant's privilege log, Bates numbers GEM000900-GEM000966. There are no communications between GEM and Laurent Cardot regarding ABreez. There is one email communication between GEM and Emmanuel Marcus regarding ABreez identified as bates numbers [sic] GEM000710. There are no communications between GEM and Razvan Costin regarding ABreez. There are no communications between GEM and Ashish Joglekar regarding ABreez. There are no communications between GEM and Philippine Lescuyer regarding ABreez. There are no communications between GEM and Eric Morgenstern regarding ABreez. Defendant reserves its rights to supplement its responses as discovery continues.

Docket Nos. 442 at 50-51, 442-9 at 11-12.

Defendant objects to this interrogatory on grounds of the attorney-client privilege, the attorney work-product doctrine, and the accountant-client privilege. Docket No. 442 at 50. Defendant further objects on grounds that it is overly burdensome and is a compound question and exceeds the allowable limit under Fed.R.Civ.P. 33(a)(1). *Id.*

Plaintiff submits, *inter alia*, that the individual names are not sub-parts of the interrogatory but are instead "sufficiently related to the primary question" of any communications "concerning Mobile Simple Software and/or Computer Code prior to filing of the Complaint." *Id.* at 54 (internal citations omitted).

Defendant did not raise the accountant-client privilege or the objection that Interrogatory 17 is a compound question and exceeds the allowable limit under Fed.R.Civ.P. 33(a)(1) in its initial response and, therefore, has waived these objections. *See Wilson v. Greater Los Angeles Ass'n of Realtors*, 2016 U.S. Dist. LEXIS 58595, at *8; *see also supra* Section III(A)(i). Moreover, Defendant fails to meaningfully address the attorney-client privilege, the attorney work-product doctrine, and its objection that the interrogatory is overly burdensome. *See Green v. Baca*, 226 F.R.D. at 653; *see also Kor Media Group, LLC v. Green*, 294 F.R.D. at 582 n.3.

Accordingly, the Court does not reach the merits of these objections. The Court GRANTS Plaintiff's request regarding Interrogatory 17 as unopposed, except for the portion of the Interrogatory

dealing with communications with GBV that the Court has already found privileged, which the Court DENIES.

    *iv.    Interrogatory 20*

Identify any counterclaim(s) for damages that you have asserted in your Answer to the Complaint, and describe the methods used to calculate such alleged damages.

<u>Text of Initial Response:</u>

Defendant objects to Interrogatory No. 20 on the grounds that it: (1) is vague with respect to the terms "methods" and "damages" and the phrase "alleged damages"; (2) is vague and ambiguous requiring Defendant to speculate as to its meaning; (3) calls for information and documents protected by the attorney-client privilege and the attorney work-product doctrine; (4) fails to identify the information sought with reasonable particularity; (5) calls for a legal conclusion; and (6) exceeds the allowable limit under F.R.C.P. 33(a)(1). Subject to and without waiving said objections, see Defendant's Answer to Plaintiff's Second Amended Complaint and Counterclaim at ECF No. 339 at 31:12-32:12, wherein Defendant's counterclaims for damages are for wrongful interference with Defendant's relationships with its clients resulting in a loss of clients, interference with contractual relations, and wrongful use of the ABreez source code. GEM is currently in the process of ascertaining the nature and extent of its damages and thereby reserves the right to supplement its response to this interrogatory as additional information becomes known during the course of discovery.

<u>Text of Most Recent Response:</u>

Defendant objects to Interrogatory No. 20 on the grounds that it: (1) calls for privileged information and documents protected by the attorney-client privilege and the attorney work-product doctrine, as detailed in Defendant's privilege log, Bates numbers GEM000900-GEM000966; and (2) exceeds the allowable limit under F.R.C.P. 33(a)(1). Subject to and without waiving said objections, see Defendant's Answer to Plaintiff's Second Amended Complaint and Counterclaim at ECF No. 339 at 31:12-32:12, wherein Defendant's counterclaims for damages are for wrongful interference with Defendant's relationships with its clients resulting in a loss of clients interference with contractual relations and wrongful use of the ABreez source code. GEM is currently in the process of ascertaining the nature and extent of its damages and thereby reserves the right to supplement its response to this Interrogatory as additional information becomes known during the course of discovery. Moreover, any additional details in response to Interrogatory No. 20 will be provided when: (1) Defendant establishes that it is the owner of the ABreez Software and that Bartech has no right, title or interest in ABreez; and (2) appropriate safeguards are in place so that Bartech cannot use this sensitive information to further disrupt Defendant's contractual relationship with its clients.

Docket Nos. 442 at 55, 442-9 at 14.

Defendant objects to this interrogatory on grounds of the attorney-client privilege and the attorney work-product doctrine, that it exceeds the allowable limit under Fed.R.Civ.P. 33(a)(1), and that the case should be bifurcated between issues of ownership of the ABreez software and damages. Docket No. 442 at 55.

Plaintiff submits, *inter alia*, that the interrogatory does not exceed the allowable limit because, not only does Defendant have only two counterclaims, the calculation of the alleged damages is "sufficiently related to the primary question," of identifying "any counterclaim(s) for damages." *Id.* at 57.

Defendant did not raise the bifurcation objection in its initial response and, therefore, has waived it. *See Wilson v. Greater Los Angeles Ass'n of Realtors*, 2016 U.S. Dist. LEXIS 58595, at *8; *see also supra* Section III(A)(i). Moreover, Defendant fails to address the attorney-client privilege and the attorney work-product doctrine. Therefore, the Court does not address the merits of these objections. *See Green v. Baca*, 226 F.R.D. at 653; *see also Kor Media Group, LLC v. Green*, 294 F.R.D. at 582 n.3.

Therefore, the only remaining objection is that the interrogatory exceeds the allowable limit under Fed.R.Civ.P. 33(a)(1). Defendant submits that this interrogatory was Plaintiff's 46th interrogatory because interrogatory 17 contains 16 interrogatories and interrogatory 19 contains "at least" 14 interrogatories. Docket No. 442 at 56. Defendant submits that interrogatory 19 contains "at least" 14 interrogatories because Defendant's answer includes its 13 affirmative defenses. *Id.* at 56.

Nonetheless, Defendant submits that, despite its belief that it was "not required to answer any additional interrogatories following No. 17," it provided the answers "in good-faith and [in] an overabundance of caution." Docket No. 442 at 56. Therefore, even if Interrogatory 20 exceeds the allowable limit under Fed.R.Civ.P. 33(a)(1), Defendant waived its objection by answering it. *See Anderson v. Hansen*, 20120 U.S. Dist. LEXIS 131010, at *18-19.

Accordingly, the Court GRANTS Plaintiff's motion regarding Interrogatory 20.

**IV.    ATTORNEYS' FEES**

Fed.R.Civ.P. 37 governs discovery disputes and sanctions stemming therefrom. Plaintiff submits that it is entitled to recover all fees expended "due to GEM's discovery failures." Docket No. 442 at 2-3. When a motion to compel is granted in part and denied in part, the Court may "apportion the reasonable expenses for the motion." Fed.R.Civ.P. 37(a)(5)(C). In exercising its discretion, the Court may consider the exceptions available under Fed.R.Civ.P. 37(a)(5)(A). *See Limtiaco v. Auction Cars.com, LLC*, 2012 U.S. Dist. LEXIS 149172, at *1 (D. Nev. Oct. 17, 2012) (internal citation omitted). Under these exceptions, "an award of expenses is not appropriate if: (1) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (2) the opposing party's nondisclosure, response,

or objection was substantially justified; or (3) other circumstances make an award of fees unjust." *Aevoe Corp. v. AE Tech Co.*, 2013 U.S. Dist. LEXIS 135755, at *1 (D. Nev. Sept. 20, 2013) (citing Fed.R.Civ.P. 37(a)(5)(A)(i-iii)).

In the instant case, the Court finds that sanctions in the form of reasonable attorneys' fees and costs are appropriate and **GRANTS** Plaintiff's request for attorneys' fees. However, because Plaintiff's motion to compel at Docket No. 366 was denied without prejudice due to both parties' failure to present an organized and full briefing, sanctions will be limited to the fees and costs expended in bringing the instant joint statement. The parties are encouraged to agree among themselves on an amount of expenses. If they are unable to do so, Plaintiff shall file a motion for attorneys' fees and costs no later than March 12, 2018. This motion shall include all necessary documents to enable the Court to make an appropriate calculation.

**V.     CONCLUSION**

For the reasons discussed above, the Court hereby **GRANTS** in part and **DENIES** in part Plaintiff's requests in the joint statement regarding Plaintiff's motion to compel. Docket No. 442. The Court **ORDERS** Defendant to produce documents in response to Plaintiff's Requests for Production 7, 15 (for the time period of September 1, 2016 to the present), 16 (excluding any communications between Defendant, Defendants Mobile Canada and Pigeat, and GBV), and 20 (for the time period of August 1, 2016 - November 30, 2016), no later than March 12, 2018. The Court **FURTHER ORDERS** Defendant to provide complete and truthful responses to Interrogatories 15, 16, 17 (excluding any communications with GBV), and 20, no later than March 12, 2018. The Court **GRANTS** Plaintiff's request for sanctions and **ORDERS** that Plaintiff is entitled to its reasonable fees and costs in bringing the instant joint statement.

Plaintiff's motion for hearing, Docket No. 446, is **DENIED** as moot.

IT IS SO ORDERED.

Dated: February 12, 2018.

_____
NANCY J. KOPPE
UNITED STATES MAGISTRATE JUDGE

22